IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____
LORI CHAVEZ-DEREMER, SECRETARY OF LABOR, )
UNITED STATES DEPARTMENT OF LABOR,         )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   ) Civil Action No. 1:25-cv-2426
                                           )
SOLUTION ENGINEERING FOR RELIABLE AND      )
VIABLE ENTERPRISES ADVISORY GROUP, LLC,    )
WILLIAM REYNOLDS, SERVE ADVISORY GROUP,    )
LLC 401(K) PLAN, AND SERVE ADVISORY        )
GROUP, LLC HEALTH WELFARE BENEFIT PLAN,    )
                                           )
            Defendants.                    )
_____)

**COMPLAINT**

Plaintiff Lori Chavez-DeRemer, Secretary of Labor, United States Department of Labor (the "Secretary") hereby alleges:

**Jurisdiction and Venue**

1. This cause of action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and is brought by the Secretary under Sections 502(a)(2) and (5) of ERISA, 29 U.S.C. §§ 1132(a)(2) and (5), to enjoin acts and practices which violate the provisions of Title I of ERISA, to obtain appropriate relief for breaches of fiduciary duty under ERISA Section 409, 29 U.S.C. § 1109, and to obtain such other further relief as may be appropriate to redress violations and enforce the provisions of Title I of ERISA.

2. This Court has subject matter jurisdiction over this action under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3. Venue with respect to this action lies in the District of Maryland under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) because the SERVE Advisory Group, LLC 401(k)

Plan and SERVE Advisory Group, LLC Health Welfare Benefit Plan were administered in the State of Maryland, within this District.

## The Parties

4. The Secretary, under Sections 502(a)(2) and (5) of ERISA, 29 U.S.C. §§ 1132(a)(2) and (5), has the authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of claims against fiduciaries and others who commit violations of ERISA.

5. Solution Engineering for Reliable and Viable Enterprises Advisory Group, LLC ("SERVE" or the "Company") is a Maryland limited liability company. Its registered business address is 2000 M. Street, NW, Washington, D.C. SERVE provided managing and consulting services to the United States government as a sub-contractor and prime contractor.

6. At all relevant times, William Reynolds ("Reynolds") was the majority owner, Chief Executive Officer, and President of the Company.

7. The SERVE Advisory Group, LLC 401(k) Plan ("401(k) Plan") is an employee benefit plan within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2), that was established to provide retirement income to eligible Company employees who participated in the Plan. The 401(k) Plan, therefore, is subject to the coverage of the Act under Section 4(a) of ERISA, 29 U.S.C. § 1003(a). The 401(k) Plan is joined as a party defendant under Federal Rule of Procedure Rule 19 solely to assure that complete relief can be granted.

8. The SERVE Advisory Group, LLC Health Welfare Benefit Plan ("Health Plan") is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3) that offered health and welfare benefits to its participants who were employees of SERVE. The Plan, therefore, is subject to the coverage of the Act, pursuant to Section 4(a) of ERISA, 29

U.S.C. § 1003(a). The Health Plan is joined as a party defendant under Federal Rule of Procedure Rule 19 solely to assure that complete relief can be granted.

9. The Company designated itself as the Plan Administrator for both the 401(k) Plan and the Health Plan. Reynolds, on the Company's behalf, carried out the Plan Administrator role with respect to both Plans. As the designated administrator, the Company was a named fiduciary under ERISA with respect to both the 401(k) Plan and Health Plan. Through Mr. Reynolds, it held and exercised discretionary authority and control over: (1) the assets and the management of the 401(k) Plan and Health Plan; (2) the disposition of those Plans' assets, and; (3) the administration of both Plans. These acts on the Company's behalf included handling the day-to-day administration of the Plans, final authority and oversight over third-party service providers to the Plans, final authority and oversight over funding both Plans—including the Company's process for deducting and handling 401(k) Plan and Health Plan contributions from employee payroll—and communications with 401(k) Plan and Health Plan participants and beneficiaries as the Plans' main point of contact. The Company was, therefore, a fiduciary to both the 401(k) Plan and Health Plan under ERISA Sections 402(a) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1102(a) and 1002(21)(A). In addition, because the Company acted simultaneously as the Plans' Sponsor and the Plans' Administrator, it was also a party in interest to both the 401(k) Plan and Health Plan under ERISA Section 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A), (C).

10. Reynolds was the Trustee for the 401(k) Plan and carried out the Company's role as the 401(k) Plan Administrator. Reynolds had final responsibility for overseeing the deduction and handling of employee contributions to the 401(k) Plan. Acting for the Company and himself, he held final authority and discretion to ensure that monies that employees deferred from their payroll checks were timely remitted to the 401(k) Plan's trust. Reynolds otherwise held final

authority over the 401(k) Plan's affairs, including as the person responsible for overseeing 401(k) Plan service providers and communicating with 401(k) Plan participants and beneficiaries. Reynolds, therefore, is a fiduciary of the 401(k) Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and a party-in-interest as that term is defined in Sections 3(14) (A), (E), and (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (E), and (H).

11. At all relevant times, Reynolds also had discretionary authority and discretionary control respecting management of the Health Plan, exercised authority and control respecting management and disposition of the Health Plan's assets, and had discretionary authority and discretionary responsibility in the administration of the Health Plan. This authority included final responsibility for overseeing the remittance of premiums due to fund the Health Plan, including employee contributions deducted via payroll. Acting for the Company and himself, Reynolds held final authority and discretion to ensure that monies that employees deferred from their regular payroll checks were timely remitted on the Health Plan's behalf. Reynolds otherwise held final authority over the Health Plan's affairs, including as the person responsible for overseeing Health Plan service providers and overseeing communication with Health Plan participants and beneficiaries. Reynolds, therefore, is a fiduciary of the Health Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and a party-in-interest as that term is defined in Sections 3(14)(A), (E), and (H) of ERISA, 29 U.S.C. §§ 1002(14)(A), (E), and (H).

**Defendants' Management and Control of the 401(k) Plan and Health Plan**

A. <u>The 401(k) Plan</u>

12. The Company established the 401(k) Plan as a 401(k) pension benefit plan that allowed for elective employee contributions, Roth contributions, employee loan repayments, discretionary employer match, and discretionary employer nonelective contributions. At all

relevant times, the Company withheld employee contributions and loan repayments from employee payroll, which were supposed to be deposited into the 401(k) Plan's trust for the purpose of providing retirement benefits to 401(k) Plan participants and beneficiaries.

13. Between the pay period dates of October 23, 2020 and April 5, 2024, the Company and Reynolds withheld employee contributions and participant loan repayments for deposit into the 401(k) Plan's trust from payroll, but they failed to deposit some of these assets timely and failed to deposit some of the assets altogether.

14. Some employee 401(k) Plan contributions were comingled with other Company assets in the Company's bank account for an average of 180 workdays following a pay date before being deposited into the 401(k) Plan's trust.

15. Between October 23, 2020 and November 23, 2022, $92,464.72 in elective employee deferrals and participant loan repayments ($75,088.56 in elective deferrals and $17,376.16 in participant loan repayments) were withheld from employees' pay, but not timely remitted to the Plan. As of July 22, 2025, the Lost Opportunity Cost ("LOC") on these amounts is approximately $5,504.59.

16. Between December 16, 2022 and April 5, 2024, the Company and Reynolds failed to remit $165,553.35 ($142,874.07 in elective employee deferrals and $22,679.28 in participant loan repayments) to the 401(k) Plan's trust. As of July 22, 2025, the LOC on these amounts is approximately $22,679.28.

17. On or around April 12, 2024, the Company and Reynolds ceased withholding employee 401(k) Plan contributions from payroll.

18. In addition, during 2022 and 2023, the Company and Reynolds remitted $113,289.42 in 401(k) Plan contributions, but they failed to allocate these monies among the

specific Plan participant accounts to which they belonged. As of July 22, 2025, the LOC on these amounts is approximately $7,700.62.

B. <u>The Health Plan</u>

19. Beginning in August 2020, the Company and Reynolds retained United Healthcare, Inc. ("United") to serve as the Health Plan's fully-insured carrier. Under United, the Health Plan was funded through a mix of Company contributions and employee contributions.

20. United provided various administrative and claims services to the Health Plan, but the Company and Reynolds retained ultimate authority for the Health Plan. The Company was responsible for most of the monthly Plan premium, with the remaining funded by voluntary elections by participants via deferrals from their paychecks. As Health Plan fiduciaries, the Company and Reynolds were responsible for forwarding Health Plan contributions to United, including employee contributions, and for ensuring that Plan participants and beneficiaries were kept aware of their Plan benefits and the Plan's status.

21. Beginning no later than October 2021, the Company and Reynolds began failing to timely remit Plan contributions to United—including employee voluntary deferrals to fund the Plan—leading to warnings from United that it would be forced to retroactively terminate the Health Plan for lack of funding. Ultimately, because of continuing failure to remit contributions, United subsequently terminated the Health Plan effective October 3, 2021. The Company and Reynolds eventually remitted Health Plan funding such that United reinstated coverage. For this initial period of Plan termination, Health Plan participants and beneficiaries incurred unpaid claims totaling approximately $23,417.10.

22. The Company entered into a new agreement with United effective September 1, 2021, but the Company and Reynolds again failed to timely fund the Health Plan. Between

approximately October 2022 and March 2023, United issued additional termination notices for Health Plan coverage. After the Company and Reynolds again remitted untimely Health Plan premiums, United again reinstated coverage on or around March 22, 2023.

23. The Company and Reynolds failed to pay the Health Plan's premiums again on or around June 1, 2023, which resulted in United notifying the Company on July 13, 2023, that the Health Plan's coverage was terminated effective July 8, 2023. As part of the termination, United stopped processing claims under the Plan. The total amount of unpaid claims relating to failure to fund the Health Plan while United was retained as the fully-insured carrier is approximately $82,011.64.

24. Despite these multiple threats of coverage termination and subsequent actual coverage termination arising from their non-payment of Health Plan contributions, neither the Company nor Reynolds timely disclosed the Health Plan's underfunded status to Health Plan participants and beneficiaries, including the fact that their Plan contributions were being remitted untimely or that their Plan benefits were at risk. Participants continued to believe that they had active healthcare insurance during various lapses in coverage and continued to seek treatment during those lapses.

25. From approximately August 1, 2023 until December 31, 2023, the Company retained CareFirst Blue Cross/BlueShield ("CareFirst") to serve as the Health Plan's fully-insured carrier and to provide third-party administrative and claims services.

26. Despite the switch from United to CareFirst, at all relevant times the Company remained the Health Plan Administrator and held ultimate authority over the Plan, its affairs, and its assets. Reynolds again carried out the Company's Plan Administrator role and acted as a Plan fiduciary with responsibility for the day-to-day administration, including control and oversight of

Company and employee contributions due to the Plan. As with United, CareFirst's role with the Plan was as a third-party claims administrator, who was subject to ultimate supervision and authority by the Company and Reynolds.

27. Under CareFirst, the Health Plan was supposed to remain funded through a mix of Company contributions and employee contributions. The Company was responsible for most of the monthly Plan premium, with the remaining funded by voluntary elections by participants via deferrals from their paychecks. As Health Plan fiduciaries, the Company and Reynolds were responsible for forwarding Plan contributions to CareFirst, including employee contributions, and for ensuring that Plan participants and beneficiaries were kept aware of their Plan benefits and the Plan's status.

28. Almost immediately after switching coverage to CareFirst, the Company and Reynolds failed to timely remit Company and employee contributions due to fund the Health Plan. On October 10, 2023, CareFirst terminated Health Plan coverage retroactive to August 31, 2023, for non-payment of premiums. CareFirst reinstated coverage on October 16, 2023, retroactive to September 1, 2023, after the Company and Reynolds remitted Health Plan funding. Subsequently, the Company and Reynolds failed to ensure timely remittance of all Health Plan funding—including approximately $7,697.74 in employee contributions during 2024—which led CareFirst to terminate the Plan on May 14, 2024, retroactive to December 31, 2023. Because of the Company's and Reynolds' failure to ensure timely Health Plan funding, approximately $41,844.00 in unpaid claims accrued during the Health Plan's agreement with CareFirst.

29. Despite these multiple threats of coverage termination and subsequent actual coverage termination by CareFirst arising from their non-payment of Health Plan contributions, neither the Company nor Reynolds timely disclosed the Health Plan's underfunded status to

Health Plan participants and beneficiaries or the fact that their Plan contributions were being remitted untimely or that their Plan benefits were at risk. Participants continued to believe that they had active healthcare insurance during various lapses in coverage and continued to seek treatment during those lapses.

## Causes of Action

### Count 1

**Fiduciary Breaches and Prohibited Transactions Relating to the 401(k) Plan**

30. Under Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary re-alleges and adopts by reference the averments and allegations of paragraphs 1 through 29.

31. By the actions and conduct described in the paragraphs above, the Company and Reynolds, as fiduciaries of the 401(k) Plan:

   a. failed to hold all assets of the 401(k) Plan in trust, in violation of Section 403(a) of ERISA, 29 U.S.C. § 1103(a);

   b. failed to ensure that the assets of the 401(k) Plan did not inure to the benefit of the Company, in violation of Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1);

   c. failed to discharge their duties with respect to the 401(k) Plan solely in the interest of the participants and beneficiaries and:

      i. for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Retirement Plan, in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A); and

9

      ii. with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B);

      iii. in accordance with the documents and instruments governing the 401(k) Plan, in violation of Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D);

d. caused the 401(k) Plan to engage in transactions where they knew, or should have known, that such transactions constituted direct or indirect transfers to, or use by or for the benefit of a party in interest, any assets of the 401(k) Plan, in violation of Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D);

e. dealt with the assets of the 401(k) Plan in their own interest or for their own account, in violation of Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1);

f. acted in transactions involving the 401(k) Plan on behalf of themselves as parties whose interests were adverse to the interests of the Plan or the interests of the participants of the Plan, in violation of Section 406(b)(2) of ERISA, 29 U.S.C. § 1106(b)(2);

g. participated knowingly in, or knowingly undertook to conceal, acts or omissions by the other that they knew to be violations of ERISA, which renders them liable for the other 401(k) Plan fiduciaries' breaches of fiduciary responsibility under Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(a)(1);

h. failed to comply with Section 404(a)(1) of ERISA in the administration of

their specific fiduciary responsibilities and each enabled the other 401(k) Plan fiduciaries to commit breaches of ERISA, which renders them liable for the other Plan fiduciaries' breaches of fiduciary responsibility under Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2); and

i. knew that the other 401(k) Plan fiduciaries had violated ERISA, but did not make reasonable efforts under the circumstances to remedy the other 401(k) Plan fiduciaries' breaches, which renders them liable for the other fiduciaries' breaches under Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3).

32. As a result of the Company's and Reynolds' ERISA violations, the 401(k) Plan participants and beneficiaries are entitled to equitable remedies and related relief to make them whole, including a surcharge remedy to compensate them for untimely and unremitted employee contributions, lost opportunity cost, and related losses. 29 U.S.C. § 1132(a)(5).

### Count 2

**Fiduciary Breaches and Prohibited Transactions Relating to the Health Plan**

33. Under Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary re-alleges and adopts by reference the averments and allegations of paragraphs 1 through 32.

34. By the actions and conduct described in the paragraphs above, the Company and Reynolds, as fiduciaries of the Health Plan:

a. failed to hold all assets of the Health Plan in trust, in violation of Section 403(a) of ERISA, 29 U.S.C. § 1103(a);

b. failed to ensure that the assets of the Health Plan did not inure to the benefit of the Company, in violation of Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1);

11

    c. failed to discharge their duties with respect to the Health Plan solely in the interest of the participants and beneficiaries and:

        i. for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A); and

        ii. with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B);

        iii. in accordance with the documents and instruments governing the Plan, in violation of Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D);

    d. caused the Health Plan to engage in transactions where they knew, or should have known, that such transactions constituted direct or indirect transfers to, or use by or for the benefit of a party in interest, any assets of the Plan, in violation of Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D);

    e. dealt with the assets of the Health Plan in their own interest or for their own account, in violation of Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1);

    f. acted in transactions involving the Health Plan on behalf of themselves as parties whose interests were adverse to the interests of the Plan or the interests

      of the participants of the Plan, in violation of Section 406(b)(2) of ERISA, 29 U.S.C. § 1106(b)(2);

  g. participated knowingly in, or knowingly undertook to conceal, acts or omissions by the other that they knew to be violations of ERISA, which renders them liable for the other Health Plan fiduciaries' breaches of fiduciary responsibility under Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(a)(1);

  h. failed to comply with Section 404(a)(1) of ERISA in the administration of their specific fiduciary responsibilities and each enabled the other Health Plan fiduciaries to commit breaches of ERISA, which renders them liable for the other Health Plan fiduciaries' breaches of fiduciary responsibility under Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2); and

  i. knew that the other Health Plan fiduciaries had violated ERISA, but did not make reasonable efforts under the circumstances to remedy the other Health Plan fiduciaries' breaches, which renders them liable for the other fiduciaries' breaches under Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3).

35. As a result of the foregoing breaches, the Health Plan's participants and beneficiaries are entitled to equitable remedies and related relief to make them whole, including a surcharge remedy against the Company and Reynolds to compensate them for unremitted employee contributions, the loss in healthcare coverage, and related expenses. 29 U.S.C. § 1132(a)(5).

### Prayer for Relief

WHEREFORE, the Secretary prays for judgment:

  A. Imposing equitable remedies, including surcharge, on Defendants, jointly and

severally to compensate the 401(k) Plan participants and beneficiaries and Health Plan participants and beneficiaries for all losses, including interest, that were caused by Defendants' misconduct;

B. Ordering the 401(k) Plan to set off set any individual account balance of Reynolds against the amount of losses, including interest or lost opportunity cost, as authorized by 29 U.S.C. § 1056(d)(4), and allocating the account balance to the non-breaching participants, if the losses are not otherwise restored to the Plan by the Company and Reynolds;

C. Appointing an independent fiduciary with plenary authority and control over the management and administration of the 401(k) Plan and Health Plan, including the authority to marshal assets on behalf of the Plans, to pursue claims on behalf of the Plans, and to take all appropriate action for the distribution of benefits to the Plans' participants and beneficiaries, with all costs and fees of the independent fiduciary to be borne by the Defendants;

D. Removing the Company and Reynolds as fiduciaries of the 401(k) Plan and Health Plan, and of any employee benefit plan for which they act as a fiduciary;

E. Permanently enjoining the Company and Reynolds from acting directly or indirectly, in any fiduciary capacity, with respect to any employee benefit plan subject to ERISA;

F. Permanently enjoining the Company and Reynolds from exercising any custody, control, or decision-making authority with respect to the assets of any employee benefit plan covered by ERISA;

G. Barring the Company and Reynolds from engaging in any future violations of

ERISA, and;

H. Awarding the Secretary the costs of this action; and such other relief as is equitable

Dated: <u>July 24, 2025</u>

| | |
|---|---|
| Mailing Address: | **UNITED STATES DEPARTMENT OF LABOR** |
| U.S. Department of Labor<br>Office of the Regional Solicitor<br>1835 Market Street<br>Mailstop SOL/22<br>Philadelphia, PA 19103-2968 | Jonathan Snare<br>Acting Solicitor of Labor<br><br>Samantha N. Thomas<br>Regional Solicitor |
| (215) 861-5124 (voice)<br>(215) 861-5162 (fax)<br>Gosfield.alexander.e@dol.gov<br>zzsol-phi-docket@dol.gov | <u>/s/ Alejandro A. Herrera</u><br>Alejandro A. Herrera<br>Acting Regional Counsel for ERISA<br><br>Alexander E. Gosfield<br>Senior Trial Attorney<br><br>Attorneys for Plaintiff<br>U.S. Department of Labor |